IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COURIER NETWORK, INC., COURIER NETWORK VIETNAM CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> AIRSPACE TECHNOLOGIES, INC., <br><br> Defendant. | Civil Action No. 25-214-GBW |

Arthur G. Connolly, III, CONNOLLY GALLAGHER LLP, Wilmington, Delaware; Elyse D. Echtman, STEPTOE LLP, New York, New York.

*Counsel for Plaintiffs*

Samuel L. Moultrie, Renée Mosley Delcollo, GREENBERG TRAURIG, LLP, Wilmington, Delaware; Fredric J. Bold, Jr., William E. Eye, GREENBERG TRAURIG, LLP, Atlanta, Georgia.

*Counsel for Defendant*

## MEMORANDUM OPINION

January 5, 2026
Wilmington, Delaware

*[signature]*

GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Pending before the Court is Defendant Airspace Technologies, Inc.'s ("Airspace") Motion to Dismiss Plaintiffs' Amended Complaint ("Motion to Dismiss") (D.I. 12), which has been fully briefed (D.I. 13; D.I. 14; D.I. 15). For the reasons below, the Court denies-in part and grants-in-part Airspace's Motion to Dismiss.

## I. BACKGROUND

The following are properly pled factual allegations that the Court takes as true for the purpose of resolving Airspace's Motion to Dismiss.[1] Plaintiffs Courier NetWork Inc. and Courier NetWork Vietnam Co., Ltd. (collectively, "Courier Network") operate a family owned same-day courier service providing expedited delivery of urgent packages, both domestically and internationally, and has been in continuous operation for nearly forty years. D.I. 11 ¶ 1. Courier Network and Airspace are competitors, as Airspace also provides courier services for expedited delivery of packages. *Id.* ¶ 2; D.I. 13 at 1.

Courier Network alleges that Airspace has focused on gaining access to its trade secrets by targeting Courier Network employees and offering them enticing packages to work for Airspace. D.I. 11 ¶ 12. Currently, Airspace employs at least five former Courier Network employees. *Id.* ¶ 13. In April 2024, Airspace hired Nguyen Thi Chau Duong ("Duong"), a former Courier Network country manager in Vietnam. *Id.* ¶ 14. Duong's role at Courier Network utilized confidential customer lists, which included contact information, specific shipping needs, preferences and price points. *Id.* ¶ 15. Duong was subject to confidentiality and non-solicitation

---

[1] Under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all factual allegations in the Amended Complaint and view those facts in the light most favorable to the plaintiff. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020).

2

agreements requiring her, upon termination, to immediately cease using Courier Network's confidential information and to refrain from soliciting Courier Network's customers for a period of twenty-four months thereafter. *Id.* ¶¶ 14, 76, 83. In her role at Airspace, Duong unsuccessfully solicited two large accounts held by Courier Network. *Id.* ¶ 17.

In January 2016, Courier Network hired Kevin Volpe ("Volpe") to work at its former headquarters in New York City. *Id.* ¶ 19. Volpe was likewise subject to confidentiality and non-solicitation agreements, which prohibited Volpe "from soliciting [Courier Network] employees and customers for one year following the termination of his employment" and "from divulging [Courier Network's] confidential information". *Id.* ¶ 27. During his nearly ten-year tenure at Courier Network, Volpe had several roles and ultimately advanced to Senior Director of Key Accounts. *Id.* ¶ 18. Volpe's job responsibilities entailed "assist[ing] in setting the account terms and pricing of sales contract between Courier Network and its largest U.S. semiconductor customers" and "marketing and selling [Courier Network's] services, as well as with supporting [Courier Network's] premier clientele." *Id.* ¶ 20. Volpe was also trained on [Courier Network's] "shipment operations, rates and terms of service, suppliers, routings, business policies, finances and business plans, customized software, marketing tool and supplies and the techniques, methods and strategies by which [Courier Network] develops, markets, distributes and sells its services." *Id.* In sum, "Volpe was privy to every aspect of the business, including trade secret logistics, operating costs, profit margins, bidding procedures, each key account's unique needs, and [Courier Network's] highly valuable confidential roster of key accounts." *Id.* ¶ 20. While employed with Courier Network, Volpe also "gained a deeper understanding of which employees are most valuable to [Courier Network's] operations and" which employees are privy to "[Courier Network's] trade secret information." *Id.* ¶ 22. In 2022, Airspace approached Volpe with an

3

employment offer; however, Courier Network countered by matching Airspace's offer, which Volpe accepted. *Id.* ¶ 23.

On January 9, 2025, Volpe resigned from his position at Courier Network to accept a position at Airspace as the Vice President of Key Accounts. *Id.* ¶¶ 18, 24. When Volpe resigned, he returned his company cellphone which contained confidential customer information. *Id.* ¶ 45. However, Courier Network learned that Volpe used the same AppleID on the company issued phone as he used on his personal phone and, as a result, retained access to Courier Network's business contacts in violation of his confidentiality agreement. *Id.* On January 10, 2025, Courier Network sent a letter to Volpe and Airspace outlining Volpe's obligations to Courier Network, including the confidentiality and non-solicitation agreements previously executed by Volpe. *Id.* ¶ 29. On January 13, 2025, Volpe responded and requested additional information from Courier Network regarding his terms of employment. *Id.* ¶ 30. The next day, Courier Network sent Volpe the Confidentiality and Non-Solicitation Agreement, the Courier Network employee handbook and the arbitration agreement between Volpe and Courier Network. *Id.* In the same month, Airspace also hired counsel. *Id.* ¶ 31. On February 7, 2025, Airspace's counsel requested a copy of the agreements between Courier Network and Volpe.

On February 11, 2025, Volpe approached Courier Network's Operations Supervisor to inquire whether he would be interested in leaving Courier Network. *Id.* ¶ 33. Courier Network's Operations Supervisor is a "crucial logistics operator" responsible for a team of operators, overseeing operations, and supporting Courier Network's key accounts. *Id.* On February 26, 2025, an office leader in Courier Network's Hong Kong office informed Courier Network's Chief Operating Officer that Airspace reached out attempting to recruit all personnel in the Hong Kong office. *Id.* ¶¶ 35, 36. Moreover, during his first few weeks at Airspace, Volpe met with Airspace's

clients to market Airspace and focus on the clients' business needs. *Id.* ¶ 41. Since Airspace and Courier Network operate in the same industry, they also share several overlapping clients. *Id.* Courier Network believes that Volpe also met with long standing Courier Network clients on Airspace's behalf, in violation of the non-solicitation agreement. *Id.* Courier Network has been traveling to visit clients who worked with Volpe in an effort to rectify business relationships. *Id.* ¶ 42.

On February 21, 2025, Courier Network commenced an arbitration proceeding against Volpe seeking to enforce its rights under the confidentiality and non-solicitation agreements, the Defense of Trade Secrets Act, and New York law. *Id.* ¶ 46. On the same day, Courier Network also sought a temporary restraining order against Volpe in the New York Supreme Court. *Id.* ¶ 47. After a hearing on March 18, 2025, the New York Supreme Court entered a preliminary injunction against Volpe, which enjoined him "from soliciting (i) employees of Courier and (ii) the twenty-five (25) semiconductor accounts that he worked on" for "the shorter of (i) one year or (ii) the time imposed by the arbitration panel." *Id.* ¶¶ 48-51.

Courier Network filed the instant action against Airspace because Courier Network has information that Airspace enlisted Volpe to continue to work with a specific Courier Network customer on Airspace's behalf and gained access to various trade secrets held by Volpe and Duong. *Id.* ¶ 59. In addition, Courier Network claims that Airspace has intentionally pursued Courier Network employees for the purpose of gaining access to Courier Network's trade secrets. *Id.* ¶ 2.

## II.   PROCEDURAL HISTORY

On February 21, 2025, Courier Network filed its Complaint for trade secret misappropriation under the Defense of Trade Secrets Act, 18 U.S.C. § 1836 and New York state law, and tortious interference with contract under New York state law against Airspace. D.I. 1. On March 7, 2025, Airspace moved to dismiss the Complaint. D.I. 8. On March 21, 2025, Courier

5

Network filed its Amended Complaint ("FAC") adding more allegations and additional factual details. D.I. 11. On April 4, 2025, Airspace filed its Motion to Dismiss, seeking dismissal of Courier Network's FAC. D.I. 12.

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

In evaluating a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 U.S. App. LEXIS 38873 (3d Cir. Apr. 6, 2018). Rule 12(b)(6) requires the Court to "accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff." *Brady v. Media*, No. 23-1078, 2024 U.S. Dist. LEXIS 160991, at *4 (D. Del. Sep. 6, 2024). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them

6

in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420). The "movant bears the burden of demonstrating that the complainant failed to state a claim upon which relief may be granted." *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, No. 23-239, 2024 U.S. Dist. LEXIS 96985, at *4 (D. Del. May 31, 2024).

## IV. DISCUSSION

Airspace moves to dismiss Courier Network's FAC, which asserts two causes of actions: trade secret misappropriation under both the Defense of Trade Secrets Act ("DTSA") and New York law, and tortious interference with contract under New York law.

### A. Courier Network Sufficiently Pleads Trade Secret Misappropriation

To survive a motion to dismiss for failure to state a claim for trade secret misappropriation under the DTSA, Courier Network "must allege (1) a trade secret (2) connected to interstate [or foreign] commerce (3) that defendants misappropriated." *JPMorgan Chase Bank, Nat'l Ass'n v. Argus Info. & Advisory Servs. Inc.*, 765 F. Supp. 3d 367, 374 (D. Del. 2025); 18 U.S.C. § 1836(b)(1). Airspace challenges the first and third elements. First, Airspace argues that Courier Network alleges "a list of broad, vague categories of information" that are not trade secrets. D.I. 13 at 11. Second, Airspace contends that the FAC fails to properly allege that Airspace misappropriated a trade secret because no specific allegations exist as to how Airspace violated any trade secrets. *Id.* at 15. The Court addresses each argument in turn below.

#### 1. The FAC Properly Alleges Trade Secrets

Under the DTSA, information is a trade secret if (1) its owner "has taken reasonable measures to keep [it] secret" and (2) its economic value comes partly from the fact that competitors do not know it. 18 U.S.C. § 1839(3). To satisfy Rule 12(b)(6), Courier Network must identify the alleged trade secrets "with enough specificity to place a defendant on notice of the bases for the

7

claim being made against it." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2021). The Court must take as true the well-pleaded allegations in the FAC and view the allegations in the light most favorable to Plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Under this standard, the FAC adequately identifies the purported trade secrets.

In its FAC, Courier Network outlines that its trade secrets consist of the following: its customer list; rates and terms of service; suppliers; routings; business policies finances and business plans; financial projections; customized software; marketing and supplies; shipment operations; account terms; pricing of sales contracts; names and addresses of Courier Network employees and other business contacts of Courier Network; and techniques, methods and strategies by which Courier Network develops, markets, distributes and sells its services. D.I. 11 ¶¶ 15, 61, 63, 66, 89.

For the first prong, Courier Network alleges it has taken "reasonable precautions to protect its trade secrets from disclosure," including by "not shar[ing] [the trade secrets] beyond those employees with a need to know them to perform their business duties" and requiring "password access" to obtain the trade secret information. *Id.* ¶¶ 62, 91. Additionally, Courier Network requires its employees to execute confidentiality agreements under which employees agree to maintain the confidentiality of customer information and other proprietary information. *Id.* ¶ 63. Courier Network's FAC adequately pleads the first prong. *See, e.g., Digital Diagnostics Inc. v. White*, No. 24-1179, 2025 WL 2392004, at *3 (D. Del. Aug. 18, 2025) (first prong satisfied through requiring execution of confidentiality agreements for employees); *JPMorgan Chase Bank, N.A*, 765 F. Supp. 3d at 375 (first prong satisfied through limiting access to data with passwords for designated employees); *Allscripts Healthcare, LLC v. Andor Health, LLC*, No. 21-704, 2021 WL 9276577, at *2 n.3 (D. Del Sep 10, 2021) (similar). Airspace argues that Courier Network alleges

8

a broad, vague list of categories rather than showing specificity. D.I. 13 at 11. While "the information alleged to be a misappropriated trade secret must be identified with enough specificity to place a defendant on notice of the bases from the claim being made against it, [Courier Network] need not spell out the details of the trade secret to avoid dismissal." *Oakwood*, 999 F.3d at 906. The FAC must identify the trade secret "with sufficient particularity . . . to permit [Airspace] to ascertain at least the boundaries within which the secret lies." *Id.* In this action, the FAC does identify the trade secrets with sufficient particularity and puts Airspace on notice of the trade secret information at issue.

With respect to the second prong, Courier Network alleges that its trade secrets are valuable, exceeding $500,000, and maintain economic value from not being generally known or readily ascertainable. D.I. 11 ¶¶ 62, 63, 66, 67, 91. Airspace claims that the FAC "lacks well-pled allegations that the identity of [Courier Network's] clients . . . did not come from publicly available information or Airspace's own knowledge. D.I. 13 at 13. The Court is not persuaded by Airspace's argument. While it is true that information that is either publicly available or generally known in the industry cannot constitute a trade secret, Airspace fails to show that the information at issue is publicly available or generally known at this stage in the proceedings. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("Information that is public knowledge or that is generally known in an industry cannot be a trade secret."). Airspace argues that, based on a Courier Network case study, a person with industry knowledge, or through the use of ChatGPT, could infer the identity of a customer from publicly available details, such as warehouse location. D.I. 13 at 13-14. While one may be able to form an educated inference by amalgamating publicly available information, with or without the assistance of ChatGPT, this alone does not render the underlying information itself publicly available or generally known. Thus, Courier Network has adequately

pled the second element of its trade secrets. Thus, the FAC adequately pleads the existence of trade secrets.

### 2. The FAC Connects Courier Network's Trade Secrets to Interstate and Foreign Commerce

The FAC states that Courier Network is a "same day international and domestic courier service that works with a select cadre of Fortune 500 companies" and operates in multiple countries, such as Vietnam, China, and the USA. D.I. 11 ¶¶ 1, 4, 5, 35. Courier Network sufficiently alleges that its trade secrets are used in services for interstate and foreign commerce, thereby sufficiently connecting its trade secrets to interstate and/or foreign commerce.

### 3. The FAC Alleges Misappropriation

Airspace contends that the FAC fails to allege misappropriation. D.I. 13 at 15-16. "There are three ways to establish misappropriation under the DTSA: improper acquisition, disclosure, or use of a trade secret without consent." *Oakwood*, 999 F. 3d at 907-08. In the FAC, Courier Network alleges improper acquisition and use. D.I. 11 ¶¶ 92-93. Airspace contends that mere possession of trade secrets is insufficient to plausibly allege disclosure or use. D.I. 13 at 15. Airspace further contends that there are no plausible allegations in the FAC showing Airspace knowingly acquired, used, or disclosed any trade secrets. *Id.* at 15-16.

An improper acquisition occurs when a trade secret is acquired "by a person who knows or has reason to know that the trade secret was acquired by improper means." 18 U.S.C. § 1839(5)(A). The DTSA defines "improper means" to include the "breach of a duty to maintain secrecy." *Id.* at § 1839(6)(A). "A common example is when a defendant agrees to abide by a confidentiality agreement but copies or retains trade secret information in violation of the agreement." *SambaSafety Inc. v. Sentinel Info. Sys. LLC*, No. 24-1224, 2025 WL 3641965, at *4 (D. Del. Dec. 16, 2025). Additionally, under the DTSA, it is enough for a plaintiff to plausibly

allege that a defendant knew or had reason to know that its employees acquired the trade secrets by improper means after agreeing to maintain the confidentiality of trade secrets. *Id.* In this action, the FAC alleges Airspace pursued Courier Network employees, such as, Volpe and Duong, for the purposes of "wrongfully mining" them for Courier Network's trade secrets and "successfully gained access" to those trade secrets. D.I. 11 ¶ 2. The FAC plausibly alleges that Courier Network informed Airspace of Volpe's confidentiality and non-solicitation obligations one day after his resignation from Courier Network. *See* D.I. 11 ¶ 29. Furthermore, Courier Network's notice was prior to any client meetings or solicitations facilitated by Volpe in his role at Airspace. Courier Network also alleges that Volpe still had access to Courier Network's trade secrets through the use of his AppleID. *Id.* ¶ 45. Thus, these allegations support a reasonable inference on a motion to dismiss that Airspace, through Volpe, improperly acquired the trade secrets. *See Imagine Grp., LLC v. Biscanti,* No. 25-1137, 2025 WL 3268486, at *3 (D. Del. Nov. 24, 2025) (finding plausible allegation of improper acquisition based on an individual defendant's alleged theft of the trade secrets, which he brought with him to the corporate defendant).

The FAC also plausibly alleges the improper use of Courier Network's trade secrets by Airspace. To plead misappropriation by improper use, Courier Network must allege "exploitation of the trade secret that is likely to result in injury to [Courier Network] or enrichment to [Airspace]." *Oakwood,* 999 F. 3d at 909. "The implication of use, especially at the pleading stage, can flow from circumstantial evidence alone." *Id.* at 910. Airspace contends that the FAC fails to show that Airspace knowingly used any trade secrets. D.I. 13 at 15-16. However, the FAC plausibly alleges that, through former Courier Network employees, Airspace has used Courier Network's trade secrets to solicit business from customers of Courier Network. D.I. 11 ¶¶ 12, 17, 41, 59, 60, 92. Viewing these allegations in the light most favorable to Courier Network, it is

reasonable to infer that Airspace improperly used Courier Network's trade secrets, which would likely result in injury to Courier Network and enrichment to Airspace. Therefore, Courier Network sufficiently pleads a claim for trade secret misappropriation under the DTSA and New York law. *See Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) ("Since the requirements are similar, courts have found that a complaint sufficiently pleading a DTSA claim . . . also states a claim for misappropriation of trade secrets under New York law.") (cleaned up).

B. **Courier Network Fails to Sufficiently Plead Tortious Interference with a Contract**

Airspace contends that Courier Network fails to state a claim for tortious interference with a contract. Specifically, Airspace claims that Courier Network's allegations are conclusory, fail to show an intentional action or harm, and provide no factual basis for the alleged damages. D.I. 13 at 17-18. "Under New York law, the elements of tortious interference with a contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *JPMorgan Chase Bank, N.A. v. 29-33 Ninth Ave., LLC*, 710 F. Supp. 3d 259, 279 (S.D.N.Y. 2024).

In its FAC, Courier Network alleges and details the applicable provisions within the confidentiality and non-solicitation agreements executed by Volpe and Duong during their employment with Courier Network. D.I. 11 ¶ 75, 76, 78-93. Thus, Courier Network has adequately pled the first element - the existence of a valid contract between the plaintiff and a third party.

With respect to the second element - defendant's knowledge of the contract - Courier Network alleges that it informed Airspace of its former employees' contractual obligations. *Id.* ¶

12

101. Specifically, Courier Network alleges that it notified Volpe and Airspace of Volpe's prohibitions against using Courier Network's confidential information and soliciting Courier Network's customers. *Id.* ¶ 30. Courier Network also alleges that it had conversations with Airspace's counsel regarding Volpe's agreements with Courier Network. *Id.* ¶ 32. In its Motion to Dismiss, Airspace does not dispute or deny that it was aware of the agreements. Courier Network thus adequately pleads the second element as to Airspace's knowledge of Volpe's contract, but fails to adequately plead, or address in the FAC, Airspace's knowledge of Duong's contract. Accordingly, because Courier Network fails to adequately plead the second element of its tortious interference with a contract claim against Airspace as it relates to Duong, Airspace's Motion to Dismiss (D.I. 12) as it relates to Duong's contract is granted. *See, e.g., TrueSource LLC v. Niemeyer*, No. 19-4121, 2021 WL 9507721, at *4 (E.D.N.Y. Jan. 21, 2021) (finding plaintiff's allegation that defendant "had knowledge" of non-compete agreement insufficient to plead that defendant had actual knowledge of the contract); *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 814 (S.D.N.Y. 2008) ("[T]he plaintiff must 'provide specific allegations' of the defendant's knowledge and cannot survive a motion to dismiss by making merely a 'conclusory assertion' of knowledge."). The Court continues with its analysis of the tortious interference with contract claim as it pertains to Volpe.

To satisfy the third element, Courier Network must sufficiently allege that Airspace intentionally and improperly induced Volpe to breach the confidentiality and non-solicitation agreements with Courier Network. While allegations in a complaint should be construed liberally to avoid dismissal of a tortious interference with a contract claim on a motion to dismiss, "a plaintiff must support his [claim] with more than mere speculation." *Kimso Apartments, LLC v. Rivera*, 180 A.D.3d 1033, 1035, 119 N.Y.S.3d 519, 522 (N.Y. App. Div. 2020). "New York law

emphasizes the requirement that a tortious interference with contract claimant establish that the defendant purposefully intended to cause a contract party to breach a particular contract." *Conte v. Emmons*, 895 F. 3d 168, 172 (2d Cir. 2018). In this action, Courier Network asserts that Airspace targets Courier Network employees, such as Volpe, by offering them "rich pay packages to move to Airspace, where Airspace pumps them for details" on Courier Network's trade secrets. D.I. 11 ¶ 12. In addition, Courier Network alleges that Airspace hired Volpe to continue to work with a specific Courier Network customer that Volpe had previously serviced while employed by Courier Network, and thereby intentionally induce Volpe to breach his agreements. *Id.* ¶¶ 59, 93. Thus, Courier Network has adequately pled that Airspace intentionally procured Volpe's breach of the confidentiality and non-solicitation agreements without justification. *See Aon Risk Servs. v. Cusack*, 34 Misc. 3d 1205(A), 946 N.Y.S.2d 65 (N.Y. Sup. Ct. 2011) ("With respect to an existing contract, persuasion to breach alone, as by an offer of better terms has been sufficient to impose liability on one who thereby interferes with performance.") (cleaned up).

With respect to the fourth element, actual breach, Courier Network alleges that Volpe breached his non-solicitation and confidentiality agreement with Courier Network by soliciting Courier Network employees and customers. Specifically, Courier Network alleges that Volpe approached a Courier Network Operations Supervisor to inquire whether the supervisor would be interested in leaving Courier Network, in violation of his non-solicitation agreement. D.I. 11 ¶ 33. Additionally, Courier Network alleges that, in his capacity as an Airspace employee, Volpe met with Courier Network's customers to discuss their business needs, in violation of his confidentiality and non-solicitation agreement. *Id.* ¶ 41. Thus, Courier Network has adequately pled an alleged actual breach.

With respect to the last element, damages resulting from the breach, Courier Network fails to sufficiently allege that it has suffered actual damages. "[N]o cause of action for tortious inducement to breach a contract arises until actual damages are sustained; nominal damages associated with the underlying breach of contract will not stand in the stead of actual damages; and, finally, no inference of actual damages is implicit by the facts alleged in the amended complaint." *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 97, 612 N.E.2d 289, 294 (N.Y. 1993). Courier Network alleges, in a conclusory manner with a lack of additional factual details, that "[i]n order to counteract Volpe's wrongful behavior on Airspace's behalf, [Courier Network's] Chief Executive Officer has been traveling to visit [Courier Network's] semiconductor customers that worked with Volpe" and "Airspace's tortious interference with [Courier Network's] agreements with [Courier Network's] former employees caused actual damages to [Courier Network]." D.I. 11 ¶¶ 42, 107. Courier Network, however, fails to identify and allege any actual loss of business or employees, lost profits, or specific damages attributable to the breach. *See* D.I. 11. Courier Network's conclusory allegations fail to satisfy the requirement that a tortious interference claim be supported by actual, non-speculative damages. Thus, Courier Network's claim for tortious interference with contract is not adequately pled. Therefore, the Court grants Airspace's Motion to Dismiss with respect to Count II of the FAC.

## V.   CONCLUSION

For all the foregoing reasons, Defendant Airspace Technologies, Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint (D.I. 12) is GRANTED-IN-PART and DENIED-IN-PART. Specifically, Defendant's Motion to Dismiss (D.I. 12) is granted with respect to Count II of the FAC. Defendant's Motion to Dismiss (D.I. 12) is denied with respect to Count I of the FAC. The Court will issue an Order consistent with this Memorandum Opinion.